United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON IMAGE, INC., | No. C-07-0635 JCS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART ANALOGIX'S MOTION TO DISMISS SILICON IMAGE'S UNFAIR COMPETITION CLAIM AND DISMISSING UNFAIR COMPETITION CLAIM WITH LEAVE TO AMEND [Docket No. 9]** |
| v. | |
| ANALOGIX SEMICONDUCTOR, INC., | |
| Defendant. | |

## I.  INTRODUCTION

On January 31, 2007, Plaintiff Silicon Image, Inc. ("Silicon Image") filed this action against Analogix Semiconductor ("Analogix"), asserting claims for copyright infringement, trade secret misappropriation and unfair competition. Analogix brings a Motion to Dismiss Silicon Image's Unfair Competition Claim ("the Motion"), which came on for hearing on Friday, May 11, 2007. For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Unfair Competition Claim is dismissed with leave to amend.

## II.  BACKGROUND

### A.  The Complaint

Silicon Image is a "leading provider of semiconductor solutions for the secure storage, distribution and presentation of high-definition content in the consumer electronics and personal computing markets." Complaint at 2. Analogix also provides semiconductor solutions for HDTV products and is a competitor of Silicon Image. *Id* at 4. Silicon Image alleges that it enjoys a competitive advantage in the marketplace, in part, as a result of its semiconductor layout designs, which it has developed "[a]t great expense and effort" and which account for the "high performance"

of Silicon Image's semiconductor chips. *Id*. at 3. These layout designs include "register maps that identify locations of registers within its chip designs." *Id*. The layout designs and register maps are trade secrets. *Id*. Silicon Image further alleges that "[a]long with its chips, Silicon Image has developed at substantial expense its configuration software that interoperates with its semiconductor chips." *Id*. This software is subject to copyright protection. *Id*. According to the Complaint, Analogix, without authorization, copied and used Silicon Image's register maps and configuration software in order to create semiconductor chips that mirror those that are made by Silicon Images. *Id*. Allegedly, Analogix markets these chips as "drop-in replaceable" with Silicon Image's chips, even though use of Analogix's chips with Silicon Image's configuration software violates the terms of Silicon Image's Software License Agreement. *Id*. According to Silicon Image, the Software License Agreement "specifies that Silicon Image's configuration software can only be used with Silicon Image chips and no other products." *Id* at 3. Silicon Image alleges that "[s]uch a restriction is common in the industry." *Id*. Silicon Image also alleges that it contacted Analogix and "placed it on notice of Silicon Image's intellectual property rights [but that] Analogix has continued its unlawful activities." *Id*. at 4.

Based on these allegations, Silicon Image asserts three claims: 1) Copyright Infringement in violation of the Copyright Act (17 §§ U.S.C. 101 *et seq.* ); 2) Trade Secret Misappropriation in violation of California's Uniform Trade Secrets Act (California Civil Code §§ 3426 *et seq*.); and 3) Unfair Competition in violation of California's Business and Professions Code §§ 17200 *et seq*. ("the UCL Claim"). The UCL Claim incorporates by reference all of Silicon Image's factual allegations. *Id*. at 7. In addition, Silicon Image specifically alleges in the UCL Claim that:

> Analogix's actions described herein constitute an (sic) unlawful, unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*. The unlawful business acts include, without limitation, violations of the Copyright Act, including, but not limited to, inducing customers to infringe Silicon Image's intellectual property rights by encouraging use of Silicon Image configuration software with Analogix chips, and theft of trade secrets.

*Id*.

**B.     The Motion**

In the Motion, Analogix asserts that Silicon Image's UCL Claim is preempted by the federal Copyright Act and the California Uniform Trade Secrets Act. In support of this position, Analogix points to the fact that Silicon Image expressly alleges in its UCL Claim that that claim is based on violations of the Copyright Act and theft of trade secrets.

In its Opposition brief, Silicon Image does not dispute that the UCL Claim is preempted to the extent it is based on alleged violation of the Copyright Act and theft of trade secrets.[1] Instead, it argues that its UCL Claim should not be dismissed because it is based on unlawful and unfair conduct that is independent from and extends beyond the alleged violation of the Copyright Act and theft of trade secrets. In particular, it asserts that its UCL Claim is based on Analogix's intentional interference with contractual relations and misleading advertising, both of which are unlawful business practices under the UCL. Silicon Image further asserts that Analogix's alleged conduct threatens competition, which is an unfair business practice under the UCL. Finally, Silicon Image asserts that it should be given the opportunity to amend the claim if the Court finds that it is defective.

In its Reply brief, Analogix argues that Silicon Image has not adequately pleaded intentional interference with contractual relations or misleading advertising, and that even if it had, the UCL Claim would still be preempted because this alleged unlawful conduct is based on the same nucleus of facts as the Copyright violation and the trade secret theft. Analogix further asserts that Silicon Image does not sufficiently allege unfair business practices under the UCL because "Silicon Image has not tied [its] allegations to any alleged violation of an antitrust law or policy or any alleged Analogix conduct that 'threatens an incipient violation of an antitrust law.'" *Id*. at 9.

---

[1] At oral argument, Silicon Image stipulated that the UCL Claim is preempted to the extent it is based on alleged violations of the Copyright Act and theft of trade secrets.

3

## III.   ANALYSIS

### A.   Legal Standard Applicable to Rule 12(b)(6) Motions

A claim should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.*  Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.1990).

### B.   Sufficiency of Allegations

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, defines unfair competition as any "unlawful, unfair or fraudulent business practice."  Silicon Image asserts that it has alleged violations of the UCL based on two unlawful business practices, namely, intentional interference with contractual relations and misleading advertising.  In addition, Silicon Image asserts that it has alleged that Analogix has engaged in unfair business practices by threatening competition.  Silicon Image argues that none of these three theories is adequately pleaded.  The Court finds that while the allegations in the Complaint as a whole are sufficient to support all three of these theories of liability under the UCL, the UCL Claim is nonetheless deficient to the extent that it fails to articulate any of these theories.

#### 1.   UCL Claim Based on Intentional Interference With Contractual Relations

In a recent decision addressing the types of conduct that are prohibited under the UCL, the Ninth Circuit noted that "[t]he California Supreme Court has given the word 'unlawful' a straightforward and broad interpretation:

> The UCL covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is

4

> forbidden by law. . . . Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices."

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1143 (2003)). Here, the alleged interference by Analogix with the Software License Agreement between Silicon Image and its customers is a business practice. *See CRST*, 479 F.3d at 1107 (holding that alleged interference by corporate competitor with plaintiff's employment contracts was a business practice). Moreover, "intentional interference with contract is a tortious violation of duties imposed by law." *Id*. Therefore, so long as the underlying claim for interference with contractual relations is adequately pleaded, so is the UCL Claim to the extent that it is based on the tortious interference claim.

While the elements of the UCL Claim derive from state substantive law, the degree of specificity required is governed by the Federal Rules of Civil Procedure. *See Taylor v. U.S.*, 821 F.2d 1428, 1432 (9th Cir. 1987). Under Rule 8(a), a plaintiff is required to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has admonished that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, the allegations are sufficient so long as they provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. The UCL Claim fails to expressly allege that it is based on tortious interference with contract and therefore fails to meet the "fair notice" requirement under Rule 8(a). On the other hand, the factual allegations in the Complaint would be sufficient to support allegations of tortious interference, were they to be articulated in the UCL Claim, as discussed below.

To state a claim for intentional interference with contractual relations, a plaintiff must allege the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990). Analogix argues that Silicon Image's interference with contract claim is deficient because the

5

Complaint fails to allege adequately the first three elements of such a claim. Drawing all reasonable inferences in favor of Silicon Image, as the Court is required to do at this stage of the proceeding, the Court concludes that the allegations are sufficient to support a claim for intentional interference with contract.

First, Silicon Image has adequately alleged the existence of a contract between itself and a third party by alleging that its customers are required to enter into a Software License Agreement which provides that Silicon Image's configuration software can only be used with Silicon Image chips. While Silicon Image does not identify the customers by name, its allegations are sufficiently specific to place Analogix on notice of the contractual relationship at issue.

The decisions cited by Analogix do not support a contrary result because in those cases, the allegations regarding the existence of a contract with a third party were so vague that they failed to indicate even the *nature* of the contract at issue, in contrast to the allegations here. *See Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) (holding that allegation that "valid contracts" existed between the plaintiff and an unspecified third party were insufficient because the plaintiff failed to give the defendants notice of "some facts surrounding the type or nature of the contracts their conduct allegedly interfered with"); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134 (S.D. Cal. 1998) (allegation regarding existence of valid contract with third party found insufficient where allegation was conclusory and contained no description of the nature of the existing relationship ); *Bradley v. Google*, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) (same). The Court also finds that Silicon Image's allegations are sufficient to allege knowledge of the Software License Agreement on the part of Analogix. In particular, Silicon Image alleges that Analogix is a competitor and that such licensing agreements are common in the industry. Based on these allegations, one could reasonably infer that Analogix knew that sale of its product to Silicon Image customers violated the Software License Agreement. In contrast, the allegations in *Beverly v. Network Solutions, Inc.*, 1998 WL 917526 (N.D. Cal. Dec. 30, 1998), on which Analogix relies, did not support a similar inference. In that case, the plaintiff asserted a claim for tortious interference with contract against Network Solutions, Inc. ("NSI"), the entity that registers top level internet domain names, alleging that by enforcing its dispute resolution policy against the plaintiff – which

6

resulted in a hold being placed on the plaintiff's domain name registration – NSI interfered with the plaintiff's existing economic relationship with a "Mr. Ross." *Id.* at *1, 3. The plaintiff did not allege that NSI knew or should have known of the plaintiff's economic relationship with Mr. Ross and there were no facts alleged that would have supported such an inference. To the contrary, the court noted that the domain name registration process was entirely automated and therefore, there would have been no reason NSI would have been aware of the Plaintiff's relationship with Mr. Ross. *Id.* at * 10.

*Summit Mach. Tool*, *Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, (9th Cir. 1993), another case cited by Analogix, is also inapposite. In that case, the court dismissed the plaintiff's claim for intentional interference with contractual relations following a bench trial during which the plaintiff admitted there was no evidence showing that the defendant knew about the contractual relationship with which it had allegedly interfered. 7 F.3d at 1436, 1442.

Finally, by alleging that Analogix markets its product as "drop-in replaceable" with Silicon Image's product, Silicon Image has adequately alleged that Analogix has engaged in intentional acts designed to induce a breach of contract. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006), cited by Analogix, has no bearing on this question because it was decided on summary judgment on the basis that there was no *evidence* that the defendant intended to induce a breach of contract.

Therefore, the Court concludes that Plaintiff's UCL Claim is deficient as to the tortious interference theory of liability only to the extent that the Claim fails to expressly allege that it is based on such a theory.

### 2.     False or Misleading Advertising

California's false advertising law provides as follows:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other

7

> manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof. Code § 17500. This provision has been "interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985). Whether the public actually has been or will be misled for purposes of a claim under the false advertising law is a factual question that cannot be resolved on a motion to dismiss. *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998). It is established that a violation of the false advertising law is also a violation of the UCL. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 210 (1983).

Here again, Silicon Image's Complaint is deficient to the extent that the UCL Claim fails to provide Analogix "fair notice" that the UCL Claim is based on a false advertising theory. On the other hand, the allegations in the Complaint would be sufficient to support such a theory if it were expressly alleged in the UCL Claim. In particular, Silicon Image has alleged that Analogix has told customers of Silicon Image that they can replace their Silicon Image chips with those of Analogix. Drawing all reasonable inferences in favor of Silicon Image, one could reasonably infer based on this allegation that the statements were likely to mislead the public to the extent they suggested that use of the Analogix chip with Silicon Image software was permissible under the Software License Agreement. Therefore, this theory of liability is adequately pleaded except insofar as Silicon Image has failed to identify the theory in its UCL Claim.

### 3. Unfair Business Practices

As noted above, the UCL defines unfair competition as any "unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. §§ 17200 *et seq.* In *Cel-Tech Commcations v. Los Angeles*

8

*Cellular Telephone Co.*, the California Supreme Court clarified the test for determining what business practices fall under the "unfair prong" in the context of suits by competitors:

> to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

20 Cal. 4th 163, 187 (1999).

Here, Silicon Image asserts that Analogix's promotion of "drop-in replaceability" is unfair because, as alleged in the Complaint, its development of both its semiconductor layout designs and the configuration software used with its chips has involved "substantial expense." *See* Complaint at 3. Further, the layout designs are, allegedly, the source of Silicon Image's competitive advantage in the marketplace. Drawing all reasonable inferences in Silicon Image's favor, these allegations could support the inference that Analogix conduct, which creates a disincentive for semiconductor manufacturers to invest in the development of semiconductor chips and related software, threatens to harm competition. Silicon Image must, however, provide adequate notice in the UCL Claim itself that it is proceeding on such a theory.

While Analogix is correct that Silicon Image will be required to establish that Analogix's conduct harms *competition* as a whole and not just Silicon Image, Analogix has not cited any case that persuades the Court that dismissal of the claim is appropriate at the pleading stage. Indeed, neither of the cases on which Analogix relies were decided on the pleadings. *See RLH Indus., Inc. v. SBC Commc'ns, Inc.*, 133 Cal. App. 4th 1277, 1286 (2005) (holding that there was no evidence of harm to competition and on that basis granting summary judgment); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099 (C.D. Cal. 2001) (holding that evidence of harm to competition was not sufficient to survive summary judgment). Accordingly, the Court concludes that Silicon Image's allegations of unfair business practices under the UCL are sufficient except to the extent that the UCL Claim does not identify this theory of liability.

### C. Preemption

Analogix asserts that even if Silicon Image has adequately alleged tortious interference and false advertising, its UCL Claim is, nonetheless, preempted to the extent it is based on this alleged unlawful conduct, both by the Copyright Act and the California Uniform Trade Secret Act.[2] The Court concludes that although Silicon Image will be required to amend its Complaint to identify these theories of liability, the UCL Claim based on tortious interference and false advertising is not preempted.

#### 1. Preemption Under the Copyright Act

The Copyright Act preempts a state law cause of action when two requirements are met. First, the rights asserted under state law must be "'rights that are equivalent' to those protected by the Copyright Act." *Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1212 (9th Cir. 1998) (quoting 1 Nimmer, § 1.01[B] at 1-11). "Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." *Id*. Here, the Court concludes that the first prong is not met either as to the intentional interference claim or the false advertising claim. Silicon Image's UCL Claim, to the extent it is based on these theories of liability, is not preempted by the Copyright Act.

The determination of whether state law rights are "equivalent" to those protected by the Copyright Act "involves determining whether the state law claim contains an element not shared by the federal law." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys*., 7 F.3d 1434, 1440 (9th Cir. 1993). The Copyright Act provides copyright owners with the exclusive rights of reproduction, distribution, performance, display and preparation of derivative works. 17 U.S.C § 106. "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic*, 424 F.3d 1079, 1089 (9th Cir. 2005) (internal citation omitted). Here, both the false advertising allegation and the tortious interference allegation include the required extra element necessary to avoid preemption by the Copyright Act.

---

[2] Analogix stipulated at oral argument that it does *not* challenge the "unfair" business practices alleged by Silicon Image on the basis of preemption.

### a. False Advertising

The false advertising allegation requires that Silicon Image establish that Analogix has made representations that are false or misleading. A number of courts have held that claims that involve the element of misrepresentation or deception – including false advertising – are not equivalent to any exclusive right protected by the Copyright Act, and therefore are not preempted. *See*, *e.g.*, *Baekert Progressive Composites v. Wave Cyber Ltd.*, 2007 WL 1110736 (S.D. Cal. April 5, 2007) (holding that California state law claim for false advertising was not preempted by Copyright Act because claim included element of misrepresentation) (citing *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772 (9th Cir. 1989) (holding that fraud claim was not substantially equivalent to any right protected under Copyright Act because it required proof of misrepresentation)); *Tracy v. Skate Key, Inc.*, 697 F. Supp. 748, 750-51 (S.D.N.Y. 1988) (holding that claim for trademark dilution was not preempted because it involved the "additional element" of misrepresentation or deception); *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205 (S.D.N.Y. 1986) (holding that fraud claim was not preempted by the Copyright Act because it contained the "extra element" of misrepresentation). The Court finds these cases persuasive and therefore concludes that the UCL Claim is not preempted to the extent it is based on false advertising.

The Court concludes that *Motown Records Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236 (C.D. Cal. 1987), cited by Analogix, is distinguishable. In that case, the defendant was alleged to have produced and aired a television advertisement for its product, Dinty Moore Stew, in which a modified version of the Supremes song "Baby Love" was performed by three women who were made to look like the members of the Supremes. *Id*. at 1237. The plaintiff alleged that the advertisement constituted unfair competition in violation of California's UCL because the advertisement falsely implied that the image of the Supremes was used with the permission of the plaintiff, who owned the copyright to the song. *Id*. at 1239. The court held that the Copyright Act preempted the UCL claim because "the essence of the plaintiff's claim derived from defendants' unauthorized use of a copyrighted work." *Id*. at 1240. In contrast, the alleged misrepresentation here is independent of the alleged copyright violation: Silicon Image does not allege that Analogix has created the false impression that its reproduction of the Silicon Image software is authorized –

11

which would amount to copyright infringement claim – but rather, that Silicon Image customers may use the Silicon Image software in combination with the Analogix chip without violating the Silicon Image Software License Agreement. Because of this additional element that is not present in *Motown Records*, the holding in that case does not apply here.

### b. Intentional Interference with Contractual Relations

The Court concludes that the tortious interference allegation is based on rights not protected by the Copyright Act and therefore, that the claim is qualitatively different from a copyright infringement claim. In reaching this conclusion, the Court finds persuasive the reasoning in *Altera Corp. v. Clear Logic*, 424 F.3d 1079, 1089 (9th Cir. 2005).

In *Altera*, plaintiff Altera and defendant Clear Logic were competitors in the semiconductor industry. *Id*. at 1081. Altera manufactured chips called "programmable logic devices" ("PLDs"), which customers tailored to their specific needs using a software program that was also developed and sold by Altera. *Id*. Clear Logic manufactured a different kind of chip called an Application-Specific Integrated Circuit ("ASIC"). ASIC chips usually use less power than PLDs and are often cheaper than PLD's. *Id*. Traditionally, customers who wanted to replace PLDs with ASICs had to go through a lengthy and difficult process to develop an ASIC that worked. *Id*. at 1082. However, Clear Logic developed a technique that was much faster and more dependable to create ASIC chips to replace Altera PLDs: Clear Logic would have Altera customers send it the "bitstream" file that was generated during the programming of the PLD. *Id*. Using that bitstream, Clear Logic could create a compatible ASIC chip in just a few weeks. *Id*.

Altera asserted that Clear Logic, in having Altera customers send it the bitstreams, was intentionally interfering with Altera's contractual relations with its customers because the software license agreement which all Altera's customers must accept prohibits use of the Altera software for any purpose other than development of PLDs by Altera. *Id*. at 1082. Clear Logic, on the other hand, argued that this claim was preempted by the Copyright Act because the alleged conduct really amounted to reproduction of Altera's software in violation of the copyright infringement. *Id*. at 1090. The Ninth Circuit held that the claim was not preempted, explaining its conclusion as follows:

12

> Altera's customers use software to create a bitstream (which is essentially information) and provide that information to Clear Logic, despite the terms of the agreement that restrict the customers to using that information for programming Altera products. The right at issue is not the reproduction of the software as Clear Logic argues, but is more appropriately characterized as the use of the bitstream.

*Id*. at 1089.

Here, as in *Altera*, the right at issue is not the reproduction of Silicon Image's semiconductor chip – a right that is protected under the Copyright Act – but rather, the use of Silicon Image's software in a manner that is in violation of the Software License Agreement. The latter provides the "extra element" necessary to avoid preemption.

Accordingly, to the extent the UCL claim is based on tortious interference with contract, the claim is not preempted by the Copyright Act.

### 2.     **Preemption Under the UTSA**

California's Uniform Trade Secrets Act ("UTSA") explicitly states that it does not preempt claims which derive from "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).  Courts have held that where a claim is based on the "identical nucleus" of facts as a trade secrets misappropriation claim, it is preempted by UTSA. *See Digital Envoy, Inc. v. Google, Inc.*,  370 F. Supp. 2d 1025, 1033 (N.D. Cal. 2005) (holding that unfair competition claim was preempted by UTSA because it was based on same nucleus of facts as trade secret misappropriation claim); *cf. Postx Corp. Secure Data In Motion, Inc.*, 2004 WL 266 3518 (N.D. Cal. Nov. 20, 2004) at * 3 (holding that unfair competition claim was not preempted by UTSA where the claim was based on "an alternative theory of liability as well as new facts").

Here, both the false advertising and tortious interference allegations are based on new facts that go beyond the alleged misappropriation of trade secrets, namely facts relating to the Software License Agreement.  Further, neither the false advertising claim nor the tortious interference claim is based on the theory that the wrong for which redress is sought is the misappropriation of trade secrets.  In contrast, in *Ernest Paper Products, Inc. v. Mobil Chemical Co., Inc.*, 1997 WL 33483520

(C.D. Cal. Dec. 2, 1997), on which Analogix relies, a claim for intentional interference with contractual relations was found to be preempted by UTSA because the wrongful conduct on which the tortious interference claim was based was the alleged misappropriation by the defendant of the plaintiff's confidential customer lists. The Court also rejects Analogix's reliance on *Samsung Electronics America, Inc. v. Bilbruck*, 2006 WL 301287 (Cal. Super. Ct. Oct. 19, 2006). In that case, the court held that a claim for intentional interference with contract was preempted by UTSA because the claim was based on misappropriation of trade secrets but the court did not describe the facts on which either claim was based.

The Court concludes that the UCL Claim is not preempted by the UTSA.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED IN PART and DENIED IN PART. In particular, the Unfair Competition Claim is deficient to the extent it fails to identify any specific theories in the Claim other than copyright infringement and trade secret theft, both of which are preempted. On the other hand, the factual allegations in the Complaint are sufficient to support the theories of liability on the UCL Claim identified by Plaintiff in its Opposition brief. Further, to the extent that the UCL Claim is based on those theories, it is not preempted. Plaintiff shall be given leave to amend the Complaint, within ten (10) days of the date of this Order, to expressly allege in the UCL Claim the theories identified in its Opposition brief.

IT IS SO ORDERED.

Dated: May 16, 2007

JOSEPH C. SPERO
United States Magistrate Judge

14