

FILED

NOV - 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**United States District Court**
For the Northern District of California

1

2

3

4

5    UNITED STATES DISTRICT COURT

6    NORTHERN DISTRICT OF CALIFORNIA

7

8    SILICON IMAGE, INC.,                         No. C-07-0635 JCS    REDACTED

9              Plaintiff,                          **ORDER RE MOTIONS FOR SUMMARY**
                                                   **JUDGMENT [Docket Nos.  207, 175]**
         v.
10
     ANALOGIX SEMICONDUCTOR, INC.,
11                                                 ~~FILED UNDER SEAL~~
              Defendant.
12   _____/

13

14   **I.      INTRODUCTION**

15           On January 31, 2007, Plaintiff Silicon Image, Inc. ("Silicon Image") filed this action against

16   Analogix Semiconductor ("Analogix"), asserting claims for copyright infringement, trade secret

17   misappropriation and unfair competition.  Analogix has asserted a counterclaim for breach of

18   contract against Silicon Image.  The parties have consented to the jurisdiction of the undersigned

19   magistrate judge pursuant to 28 U.S.C. § 636(c).  The parties have filed motions for summary

20   judgment.  A hearing on the motions was held on Friday, October 31, 2008 at 9:30 a.m.  For the

21   reasons stated below,  Silicon Image's summary judgment motion is GRANTED.  Analogix's

22   summary judgment motion is GRANTED in part and DENIED in part .

23

24

25

26

27

28

United States District Court
For the Northern District of California

## II.   BACKGROUND[1]

### A.   Procedural Background

In its original complaint, Silicon Image asserted three causes of action:  1) direct and indirect copyright infringement in violation of the Copyright Act (17 §§ U.S.C. 101 *et seq.* ); 2) trade secret misappropriation in violation of California's Uniform Trade Secrets Act (California Civil Code §§ 3426 *et seq.*); and 3) unfair competition in violation of California's Business and Professions Code §§ 17200 *et seq.*  Analogix filed a motion to dismiss on March 8, 2007, arguing that Silicon Image's unfair competition claim was preempted by the federal Copyright Act and California's Uniform Trade Secrets Act.  In an order filed May 16, 2007, the Court agreed with Analogix that the unfair competition claim was preempted to the extent it was based on alleged copyright infringement and trade secret theft.  However, it also concluded that Plaintiff had alleged sufficient facts to support an unfair competition claim based on intentional interference with contract and false advertising, neither of which was preempted.  Accordingly, Silicon Image was permitted to amend its complaint to properly allege its unfair competition claim.

On May 30, 2008, Silicon Image filed its First Amended Complaint, in which it added a claim for intentional interference with contractual relations and clarified the grounds on which its unfair competition claim was based.  With respect to the unfair competition claim, Silicon Image alleges in the First Amended Complaint that: 1)  Analogix intentionally interfered with Silicon Image's Software License Agreements with its customers; and 2)  Analogix has engaged in false advertising by promoting its chip as "drop-in replaceable" with Silicon Image's chip.   In particular, the First Amended Complaint alleges that promotion of Analogix's chips as drop-in replaceable "misleads Silicon Image's customers that they can use Silicon Image's configuration software with other chips, namely, Analogix chips, even though the Software License Agreement prohibits such use." First Amended Complaint, ¶ 38.

---

[1]A detailed discussion of the factual background of this case can be found in the Court's December 20, 2007 order denying Silicon Image's motion for a preliminary injunction. *See* Docket No. 119.

United States District Court

For the Northern District of California

1    On June 18, 2007, Analogix filed an answer to the First Amended Complaint and asserted a

2  counterclaim for breach of contract.  The counterclaim is based on the allegation that Silicon Image

3  breached the confidentiality provisions of the Authorized Test Center Agreement ("ATC

4  Agreement") between Silicon Image and Analogix, under which materials and information supplied

5  by Analogix for compliance testing may be disclosed only to Silicon Image employees who are

6  involved in compliance testing.

7    On July 14, 2008, Silicon Image dismissed its copyright claim to the extent it was based on

8  indirect infringement, stipulating that it would not be pursuing its claims for contributory

9  infringement or inducement to infringe at trial, but rather, would be proceeding with the claim only

10  on a theory of direct infringement.  In the same stipulation, Silicon Image dismissed its claim for

11  intentional interference with contract and dropped intentional interference with contract as a basis for

12  the unfair competition claim.

13    **B.    Plaintiff's Motion**

14    Silicon Image asserts in its motion that it is entitled to summary judgment on the

15  counterclaim for breach of contract asserted by Analogix if Analogix seeks actual damages on that

16  claim because Analogix has failed to identify any evidence of actual damages arising from the

17  alleged breach.  Silicon Image assumes, for the purposes of the motion, that there was a breach of the

18  ATC Agreement.  In the alternative, if Analogix seeks only nominal damages on its counterclaim,

19  Silicon Image asks that the Court grant partial summary judgment on the question of actual damages

20  and exclude any evidence or arguments at trial that Analogix suffered actual damages arising from

21  the alleged breach of contract.  Silicon Image argues that it will be extremely prejudiced if Analogix

22  is permitted to allege new facts or theories relating to damages, given that discovery is long since

23  closed.

24    Analogix argues that it has produced sufficient evidence of actual damages to survive

25  summary judgement and that it should be allowed to present that evidence to the jury.  First,

26  Analogix cites to extensive testimony by Silicon Image employees that it asserts establishes that

27

28                                                    3

1   Analogix's confidential information was disclosed to Silicon Image sales and marketing employees

2   who were not involved in compliance testing.  Opposition at 5-7.  Analogix asserts that the

3   disclosure of its confidential information gave Silicon Image an unfair advantage with its

4   competitors and notes that Kati Selan, an ATC Coordinator employed with HDMI LLC,

5   acknowledged that the purpose of the confidentiality provision in the ATC Agreement was to protect

6   those who submit chips for compliance testing from "unfair competition."  *See* Declaration of Ryan

7   J. Padden in Support of Analogix Semiconductor, Inc's Opposition to Silicon Image, Inc.'s Motion

8   for Summary Judgment, or in the Alternative, Motion in Limine ("Padden Opposition Decl."), Ex. 1

9   (Selan Deposition Testimony) at 39.

10

# REDACTED

13

14

15   Padden Opposition Decl., Ex. 16.  According to Analogix, this email was itself the result of a breach

16   of the ATC Agreement because it followed submission, on **REDACTED** of the REDACTED chip for

17   testing, which Analogix asserts was improperly revealed to Silicon Image employees who were not

18   involved in compliance testing. *Id.*, Ex. 18.  The latter assertion is based on evidence that one week

19   after the ANX 8077 was submitted, Silicon Image's attorneys at the law firm of Fenwick & West

20   began accessing Analogix's web pages on ANX 8077.  According to Analogix, Silicon Image

21   reversed the policy on June 18, 2008. *Id.*, Ex. 17.  The refusal to accept Analogix chips for testing

22   during the 9-month interim period, Analogix asserts, placed it at a marketing disadvantage and

23                              **REDACTED**

24                              **REDACTED**                                      *Id.*,

25   Ex. 20 (Jack Hsieh Deposition Testimony) at 110.  Analogix further asserts that to the extent it might

26   have had its chips tested at facilities run by other companies, such as Panasonic's ATC in Japan,

27   Analogix would have been at a disadvantage because of the geographical inconvenience of using

28   these facilities. *See id.* at 104.

United States District Court
For the Northern District of California

1    Analogix argues in the alternative that even if the Court finds that its claim for actual

2  damages fails, it should be permitted to proceed to trial on its counterclaim for an award of nominal

3  damages.  It rejects Silicon Image's assertion that it did not meet the disclosure requirements of

4  discovery.

5    **C.    Defendant's Motion**

6    In its Motion for Summary Judgment, Analogix asserts that it is entitled to judgment as a

7  matter of law in its favor on Plaintiff's claims for copyright infringement and unfair competition.

8  With respect to the copyright claim, Analogix argues that the claim fails because: 1) Silicon Image

9  has no evidence that Analogix's source code is substantially similar to Silicon Image's copyrighted

10  source code; and 2) the email on which Silicon Image relies in support of the claim – an email

11  between Analogix employees containing the Silicon Image source code ("the April 4 Email") – is

12  insufficient to establish a claim of infringement because it does not support an award of injunctive

13  relief or damages.  Analogix argues that damages are not available because the Email was sent before

14  the copyright on the source code was issued and because there is no evidence Analogix ever used the

15  source code.  It also states that although it assumes for the purposes of the motion the Email is a de

16  minimis act of infringement, it "may argue" that there was no infringement because the Email was

17  sent between two employees in China and thus, did not occur within the United States.  With respect

18  to injunctive relief, Analogix argues that the April 4 Email is not sufficient to show a threat of future

19  violations.

20    Analogix argues that it is entitled to summary judgment as to the unfair competition claim

21  based on insufficient evidence.  In particular, Analogix argues that Silicon Image has not offered any

22  evidence showing that Analogix engaged in unfair or fraudulent business practices and that Silicon

23  Image's evidence of unlawful business practices is insufficient.  First, Analogix argues that Silicon

24  Image has presented insufficient evidence of intentional interference with contract.  Second,

25  Analogix asserts that Silicon Image's evidence of false advertising fails because Silicon Image has

26  failed to identify any specific customer or potential customer to which Analogix has marketed its

27  chips as "drop-in replaceable" with Silicon Image's chips.  Further, Analogix argues, Silicon Image

28  has not produced any extrinsic evidence that: 1) any customer was confused or misled; 2) any of

1    Analogix's advertisements were misleading or untrue; or 3) that any misrepresentations were

2    material to any customer making purchase decisions.

3          In its Opposition, Silicon Image argues that it has presented sufficient evidence to survive

4    summary judgment as to both its copyright claim and its unfair competition claim.  With respect to

5    the copyright claim, Silicon argues that the Email is sufficient to give rise to a material factual issue

6    as to direct infringement because: 1) a copyright protects a work from the date of creation, if the

7    copyright is issued after the alleged infringement; and 2) there is evidence that the email was stored

8    on a server in the United States, which provides a sufficient basis to find infringement under U.S.

9    copyright law.[2]  Silicon Image further asserts that there is a factual issue as to whether injunctive

10   relief is warranted in light of evidence that Analogix's "entire business model is based on stealing

11   Silicon Image's intellectual property."  Opposition at 10.  Silicon Image does not dispute that it is not

12   entitled to damages on this claim.[3]

13         Regarding the unfair competition claim, Silicon Image argues that the claim should survive

14   summary judgment because there is sufficient evidence of false advertising to create a factual issue.

15   First, Silicon Image asserts that Analogix has relied on incorrect case law to support its argument

16   that Silicon Image must produce extrinsic evidence that customers were misled by its advertising.

17   According to Silicon Image, California courts have expressly rejected the reasoning found in the line

18   of federal cases cited by Analogix.  Second, Silicon Image points to evidence that Analogix did, in

19   fact, market its chips as drop-in replaceable.  Third, Silicon Image points to evidence that Analogix's

20   chips were not software-compatible with the Silicon Image chips (even though they may have been

21   pin-compatible and register compatible), which prevents them from being drop-in replaceable.

---

25   [2]Silicon Image does not dispute that its source code is not substantially similar to that of
     Analogix.  *See* Opposition at 7.  In its Reply brief, Analogix argues that in light of this concession, it
26   should be awarded partial summary judgment that its source code does not infringe Silicon Image's
     copyrights.  Based on Silicon Image's non-opposition, the Court grants Analogix's request for summary
27   judgment on this issue.

28   [3]Silicon Image stipulated at oral argument that it is not seeking damages on this claim and is only
     seeking injunctive relief.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

III.     **ANALYSIS**

A.     **Legal Standard Applicable to Rule 56 Motions**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

B.     **Plaintiff's Motion**

1.     **Background**

In August 2005, Silicon Image and Analogix entered into an Authorized Test Center Agreement ("ATC Agreement"), which set forth the terms by which Analogix could provide products and related materials to the Silicon Image testing center for compliance testing. Silicon Image, Inc. and Analogix Semiconductor, Inc.'s Joint Statement of Undisputed Facts Relating to Silicon Image, Inc.'s Motion for Summary Judgment ("Joint Statement of Undisputed Facts"), No. 1. The ATC Agreement includes a confidentiality provision, which provides, in part, as follows:

> All Confidential Information furnished pursuant to the Authorized Test Center Agreement may be used solely for the purpose of HDMI compliance testing ("the Business Purpose"). No other right, license or authorization, express or implied, to make, have made, or otherwise use is granted and each party agrees to be so limited with respect to all Confidential Information hereby received. All Confidential Information shall remain that of the disclosing

party.  The receiving party acknowledges that all Confidential Information is owned solely by the discloser (or its licensor).

Neither party shall disclose Confidential Information received from the disclosing party to any third party nor use such Confidential Information for any purpose other than the Business Purpose.  Provided that the parties may disclose Confidential Information to the HDMI Agent for purposes of establishing compliance with the Adopter Agreement.  The receiving party shall use the same degree of care in maintaining the confidentiality of the Confidential Information as it uses with respect to its own information that is regarded as confidential and/or proprietary by such party, but in any case shall at least use reasonable care.  Each party agrees that it will restrict the access of all Confidential Information to only those of its employees and consultants who have need to be informed of the Confidential Information for the purposes for which the Confidential Information is provided, which persons will be bound to the receiving party by an agreement of confidentiality that contains substantially the same obligations as contained in these Terms and Conditions.

Declaration of Micahel R. O'Neill in Support of Plaintiff and Counter-Defendant Silicon Image, Inc.'s Motion for Summary Judgment, or in the Alternative, Motion *in Limine* ("O'Neill Motion Decl."), Ex. A (ATC Agreement) at 3.

Analogix alleges in its Counterclaim that it provided confidential information to Silicon Image under the ATC Agreement in connection with compliance testing of certain of Analogix's HDMI chips.  Joint Statement of Undisputed Facts, No. 2.  Analogix further alleges that Silicon Image passed this information on to employees who were not involved in the compliance testing process and in doing so, breached the ATC Agreement.  *Id.*, No. 3.  In its counterclaim, Analogix alleges that as a result of Silicon Image's breach of the ATC Agreement, it has suffered "great harm and damage."  Defendant Analogix Semiconductor, Inc.'s (1) Answer to Silicon Image's First Amended Complaint and (2) Counterclaim ("Answer and Counterclaim") at 17.

In its initial disclosures, served on May 4, 2007, Analogix stated that "[a]t this time, Analogix has not asserted a claim for monetary damages against Silicon Image in this action."  Joint Statement of Undisputed Facts, No. 6.  It is undisputed that Analogix did not update this response.  Undisputed Fact No. 7.  On July 13, 2007, Analogix responded as follows to an interrogatory by Silicon Image asking Analogix to state all facts supporting or contradicting the claim that it was damaged by Silicon Image's alleged breach of the ATC Agreement:

Analogix has been harmed by the fact that the Silicon Image employees involved in certification testing disclosed Analogix's confidential business information, including the fact that Analogix had submitted a product for testing and that Analogix believed that it had a product that would pass certification testing, to Silicon Image's director of product marketing, an individual who had no right to have access to Analogix's Confidential Information.  Silicon Image's marketing personnel's use of such information about Analogix,

8

including information as to Analogix's likely release of competing products into the marketplace, provides Silicon Image a competitive advantage of Analogix, which causes harm to Analogix.

Joint Statement of Undisputed Facts, No. 9.

Expert reports in this action were due on July 18, 2008. Joint Statement of Undisputed Facts, No. 10. Analogix did not issue an expert report addressing damages on its counterclaim. Dr. Allen Cox, the expert retained by Analogix to rebut Silicon Image's damages expert, testified that he was originally engaged to address the question of damages on the counterclaim but that after spending approximately 100 to 130 hours on the issue, Analogix's attorneys advised him to stop working on that question because they had decided not to issue an expert report on Analogix's damages. O'Neill Motion Decl., Ex. E at 26-28.

Silicon Image, in turn, noticed a Rule 30(b)(6) deposition to address, *inter alia*, Analogix's damages on the counterclaim. Padden Opposition Decl., Ex. 22 (deposition notice). After Analogix had designated a witness and a deposition had been scheduled, however, Silicon Image cancelled the deposition and did not reschedule it. *Id.*, ¶ 25 & Ex. 24.

On February 26, 2008, Analogix asked Silicon Image to remove the "Outside Attorney Eyes Only" designation that Silicon Image had placed on approximately 200 documents that had been produced by Silicon Image in discovery. *Id.*, Ex. 25. According to Analogix, the designation on these documents did not satisfy the requirements of the protective order in this case. *Id.* According to Analogix's counsel, Silicon Image removed the designations from correspondence between Silicon Image and Analogix but refused to remove the designation from internal Silicon Image documents. *Id.*, ¶ 25. According to Analogix, because these documents could not be reviewed by Analogix's business personnel "to assess the damages caused by" Silicon Image's breaches of the ATC Agreement, Analogix's employees were unable to discover how Silicon Image misused Analogix's information and thus impaired their ability to prepare discovery responses on that question. Opposition at 11-12.

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

### 2.   Evidence of Actual Damages

Silicon Image argues that to the extent Analogix seeks actual damages on the counterclaim, the claim should be dismissed, citing an absence of evidence that could support a reasonable determination of the extent of damages.  The Court agrees.

In order to establish a breach of contract under California law,[4] a plaintiff must establish the following elements: 1)  the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant;  and 4) damages.  *First Commercial Mortgage Company v. Reece*, 89 Cal. App. 4th 731, 745(2001) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476).  Even where no actual damages can be established, a plaintiff who has established that a contract was breached is entitled to an award of nominal damages as the breach itself is a "legal wrong that is fully distinct from the actual damages." *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959); *see also* Cal. Civ. Code Section 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages").

Where a breach of contract causes actual damages, the measure of damages is as follows:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

Cal. Civ. Code Section 3300.  Section 3301 further provides that damages on a breach of contract must be "clearly ascertainable in both their nature and origin." Cal. Civ. Code Section 3301. California courts have held that "[w]here the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty." *GHK Assoc. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 873 (1990).  The court in *GHK* explained, "[t]he law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id.*

---

[4]Although the ATC Agreement includes a choice of law provision specifying that it shall be governed by New York law, the parties have stipulated that the law of California does not differ from that of New York with respect to the issues raised by Silicon Image's motion and therefore, that California law may be applied in determining the motion.

United States District Court

For the Northern District of California

1    Here, Analogix has cited to evidence from which a jury might find a breach of the ATC

2    Agreement.  On the basis of this evidence, Analogix is entitled to present its breach of contract

3    claim, at least as to a claim for nominal damages.  Analogix has also presented evidence from which

4    a jury could conclude that Analogix suffered some actual damage from the breaches, based on the

5    competitive advantage Silicon Image allegedly obtained from disclosure of Analogix's confidential

6    information.

7        What is entirely absent is any evidence that would provide a reasonable basis for *quantifying*

8    these damages.  Although Analogix states that it will establish the amount of actual damages through

9    witness testimony at trial, it does not offer a single example of deposition testimony or other

10   evidence that will provides a basis for determining how much Analogix might have suffered, in

11   monetary terms, from either the improper disclosure of specific confidential information to Silicon

12   Image employees or Silicon Image's alleged refusal to test Analogix chips at its ATCs in Shenzen

13   and Shanghai.[5]   Having pointed to no evidence or methodology that suggests any reasonable basis

14   for determining actual damages, Analogix's claim for actual damages on its counterclaim cannot

15   survive summary judgment.[6] Further, Analogix may not present any evidence at the trial that it

16   suffered actual damages as a result of the conduct alleged in the counterclaim.

17   **C.    Defendant's Motion**

18       **1.    The Copyright Claim**

19       Analogix asserts that it is entitled to summary judgment on Silicon Image's copyright claim

20   because: 1) it is undisputed that its source code is not substantially similar to that of Silicon Image

21   and; 2) the only evidence of infringement, the April 4 Email, fails as a matter of law because it

22   cannot support an award of either damages or injunctive relief.  Silicon Image does not dispute that

23   its source code is not substantially similar to that of Analogix.  Nor does it argue that it is entitled to

24   damages on this claim.  Conversely, Analogix does not dispute, at least for the purposes of this

25

26   [5]The Court assumes for the purposes of resolving Silicon Image's motion that the latter category of damages would satisfy the causation requirements for actual damages but does not decide that question.

27

28   [6]Because the Court concludes that Analogix's claim for actual damages fails as a matter of law, it need not reach Silicon Image's argument that Analogix should be precluded from presenting evidence of actual damages as a discovery sanction under Rule 37 of the Federal Rules of Civil Procedure.

United States District Court

For the Northern District of California

1  motion, that the April 4 Email constitutes an act of infringement.  Thus, the only issue that remains

2  for the Court is whether there is sufficient evidence that injunctive relief might be warranted for the

3  claim to survive summary judgment.  The Court finds that there is and therefore denies Analogix's

4  request for summary judgment on this claim.

5    "[A]s a general rule, a copyright plaintiff is entitled to a permanent injunction when liability

6  has been established and there is a threat of continuing violations."  *Universal Studios, Inc. v. Sony*

7  *Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981), *rev'd on other grounds*, 464 U.S. 417 (1984).

8  Analogix argues that the April 4 Email is insufficient to support injunctive relief because there is no

9  evidence in the record that Analogix is ever going to resend the April 4 email or use the SiI9030

10  source code that was copied in it.  Analogix cites to deposition testimony by its employee, Fei Yao,

11  that Analogix "did not use any code from any other company" when it developed its 9030 firmware.

12  Declaration of David S. Amelming in Support of Analogix Semiconductor, Inc.s Motion for

13  Summary Judgment "Amelming Motion Decl."), Ex. 7.

14    On the other hand, Silicon Image argues that there is a threat of future copyright violations

15  because Analogix's "entire business model is based on stealing Silicon Image's intellectual

16  property."  In support of this contention, Silicon Image cites to evidence showing Analogix went to

17  great lengths to obtain Silicon Image's intellectual property.  *See, e.g.*, Declaration of Michael R.

18  O'Neill in Support of Plaintiff and Counter-Defendant Silicon Image, Inc.'s Opposition to Analogix

19  Semiconductor, Inc.s Motion for Summary Judgment ("O'Neill Opposition Declaration"), Ex. D

20  (Deposition of Kewei Yang, testifying that   **REDACTED**

21  **REDACTED** at 15-17; Ex. E (February 2005 email between Analogix employees stating that

22        **REDACTED**

23        **REDACTED**       ; Ex. Y

24  (admissions by Analogix that it used Silicon Image Programmer Reference Guides to develop many

25  of its chips); Ex. Z (Deposition of Akyra Pagoulatos, testifying that   **REDACTED**

26  **REDACTED**

27    The dispute between Silicon Image and Analogix regarding the availability of injunctive

28  relief turns of the scope of injunctive relief a court is permitted award on the basis of a finding of

United States District Court

For the Northern District of California

1   liability.  Analogix suggests that injunctive relief must be limited to the copyright that has been

2   found infringed and therefore, that the relevant question is only whether there is a threat of future

3   violations of that particular copyright.  Silicon Image, on the other hand, assumes that in addressing

4   the likelihood of future violations, the Court is not limited to the copyright that was infringed, but

5   rather, may consider whether there is a likelihood that *other* copyrights will be infringed.  Indeed,

6   Silicon Image does not argue that Analogix is likely to infringe the 9030 copyright again as the basis

7   for its request for injunctive relief.   The Court concludes that Silicon Image has framed the issue

8   correctly and that Analogix's focus on the 9030 copyright is overly narrow.

9        Under the Copyright Act, where infringement of a copyright has been found, the court may

10  "grant temporary or final injunctions on such terms as it may deem reasonable to prevent or restrain

11  infringement of a copyright." 17 U.S.C. § 502(a).  It is established that "[i]njunctive relief should be

12  narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on

13  lawful activity." *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994).

14  Nonetheless, the Court has found no authority for the proposition that injunctive relief under the

15  Copyright Act is limited to the copyright on which liability has been found. To the contrary, in cases

16  where courts have found that defendants have engaged in a pattern of infringing the plaintiffs'

17  copyrights such that there is a threat that other copyrights owned by the plaintiffs will be infringed,

18  they have routinely entered injunctions that enjoin infringement by those defendants of *all* of the

19  plaintiffs' copyrights, even if the copyrighted works have not yet been created.   *See, e.g., Princeton*

20  *University Press v. Michigan Document Services,* Inc., 99 F.3d 1381, 1392 (6th Cir. 1996) ("[t]he

21  weight of authority supports the extension of injunctive relief to future works"); *Sony BMG Music*

22  *Entertainment v. Porter*, 2008 WL 4460284 (E.D. Wash. October 2, 2008) ("[w]here necessary to

23  prevent future infringement, a permanent injunction may be tailored to enjoin the infringement of

24  copyrighted works not yet in existence"); *Sailor Music v. IML Corp.,* 867 F. Supp. 565, 569 (E.D.

25  Mich. 1994) ("[p]ermanent injunctions are typically granted when there is evidence of an unlawful

26  encroachment upon any musical composition that has been licensed through the American Society of

27  Composers, Authors and Publishers because of the strong probability that unlawful performances of

28  other copyrighted material will occur"); *Marvin Music Co. v. BHC Ltd. Partnership*, 830 F. Supp.

1  651, 655 (D. Mass. 1993) (holding that where plaintiffs were owners of copyrights in music who

2  demonstrated that their copyrights had been infringed, they were entitled to an injunction that

3  prohibited infringement of any musical work licensed by the American Society of Composers,

4  Authors and Publishers because defendants were likely to infringing other musical copyrights).

5      In light of the case law cited above, the Court concludes that the question of whether Silicon

6  Image may be entitled to injunctive relief will require it to look beyond the threat that the 9030

7  source code is likely to be used by Analogix in the future or that the April 4 Email will be resent.

8  Instead, the Court will need to consider whether there is a threat that *other* Silicon Image copyrights

9  – including copyrights that do not yet exist – are likely to be infringed by Analogix. Analogix has

10  failed to cite to any authority that persuades the Court that it is entitled to summary judgment on this

11  question.

        **2.**    **The False Advertising Claim**

13      Analogix argues that it is entitled to summary judgment on this claim because: 1) Silicon

14  Image has not pointed to any evidence that it actually marketed its chips as "drop-in-replaceable" and

15  2) there is no evidence that any customer was actually misled by the representation.   The Court

16  rejects both arguments.

        **a.**    **Evidence that Analogix Advertised Chips as Drop-In Replaceable**

18      Silicon Image bases its false advertising claim on the theory that Analogix advertised its

19  chips as "drop-in replaceable" with those of Silicon Image, thus implying that the chips were pin-

20  compatible, register compatible *and* software compatible.  In fact, Silicon Image asserts, there is

21  strong evidence that Analogix was never able to make its chips software compatible with those of

22  Silicon Image and therefore, these representations were false.  A review of the evidence cited by

23  Silicon Image in support of its false advertising claim reveals that some of the representations

24  referred only to pin or register compatibility and thus do not constitute false advertising under

25  Silicon Image's own theory of the claim.  *See, e.g.*, O'Neill Opposition Decl., Ex. W (Deposition of

26  Jack Hsieh, testifying that he told an Analogix customer that the ANX 9030 and the SiI9030 were

27  "pin-to-pin" compatible but that the firmware would be "totally different").

28

**United States District Court**
For the Northern District of California

1  Other evidence, however, suggests that Analogix customers were told that Analogix chips

2  were "compatible" or "drop-in replaceable." *See, e.g.,* O'Neill Opposition Decl., Ex. Q (Powerpoint

3  presentation by Analogix addressing  **REDACTED**

# REDACTED

; Ex. S (internal Analogix email suggesting

5  **REDACTED**

REDACTED  ; Ex. AA (same); Ex. U (suggesting that Analogix sales

7  representative told customer  **REDACTED**

**REDACTED**  Ex. V (email from  REDACTED

9  Analogix sales representative REDACTED to  **REDACTED** stating that  **REDACTED**

**REDACTED**  In light of this evidence, the Court concludes that

11  there is at least a fact question as to whether Analogix told customers its chips were drop-in

12  replaceable.

        **b.**       **Evidence that Customers Were Likely to be Misled**

14  Analogix argues that Silicon Image's false advertising claim fails because there is no

15  extrinsic evidence showing that the alleged statements that Analogix chips were drop-in replaceable

16  would tend to mislead a reasonable consumer. Silicon Image asserts that it is not required to present

17  extrinsic evidence that its customers were misled and that its claim should survive summary

18  judgment because a reasonable consumer would be misled by Analogix's statements. The Court

19  concludes that Silicon Image is not required to provide extrinsic evidence in support of its unfair

20  competition claim and that there is a fact question as to this issue.

21  Under California law, in order to prevail on an unfair competition claim based on false

22  advertising, a plaintiff must establish that the advertisement or conduct is "likely to deceive" a

23  "reasonable consumer." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 506-508 (2003).

24  The reasonable consumer is the "ordinary consumer within the target population." *Id.* at 510. He or

25  she is neither "exceptionally acute and sophisticated" nor "the least sophisticated consumer." *Id.*

26  Further, even "[a] perfectly true statement couched in such a manner that it is likely to mislead or

27  deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Day*

28  *v. AT & T Corp.*, 63. Cal. App. 4th 325, 332-333 (1998).

United States District Court

For the Northern District of California

1    California courts have held that "[t]he falsity of . . .advertising claims may be established by

2    testing, scientific literature, or anecdotal evidence." *Consumer Advocates v. Echostar Satellite*

3    *Corp.*, 113 Cal. App. 4th 1351, 1362 (2003) (quoting *National Council Against Health Fraud, Inc. v.*

4    *King Bio Pharmaceuticals, Inc.*., 107 Cal. App. 4th 1336, 1348 (2003)). "[W]ith regard to the

5    showing of deception, 'the primary evidence in a false advertising case is the advertising itself.'"

6    *Colgan v. Leatherman Tool Group Inc.*, 135 Cal. App. 4th 663, 682 (2006) (quoting *Brockey v.*

7    *Moore*, 107 Cal. App. 4th 86, 100 (2003)). In *Colgan*, the court of appeal affirmed the trial court's

8    summary judgment on a false advertising claim in favor of the plaintiff where the defendant,

9    Leatherman Tool Group, had marketed its tools as "Made in U.S.A." and where undisputed evidence

10   showed that significant work on the tools had been performed outside of the United States. 135 Cal.

11   App. 4th at 681. The court of appeal rejected the defendant's assertion, based on a line of federal

12   authority applying California law, that the plaintiff was required to present extrinsic evidence, such

13   as consumer surveys, to show consumers had been misled. *Id.* The court found that these cases do

14   not accurately reflect California law, citing to *Echostar*. *Id.*

15       In *Echostar*, the defendant was a provider of satellite television service and advertised in its

16   brochure that its service included an on-screen program guide that would allow a consumer view the

17   schedule "up to 7 days in advance" and that 50 channels would be provided. 113 Cal. App. 4th at

18   1353. The trial court granted summary judgment in favor of the defendant on plaintiff's false

19   advertising claim, finding that the plaintiff had not shown that a reasonable consumer would be

20   misled by the statements. *Id.* at 1358. The court of appeal reversed, finding that whether a

21   reasonable consumer would be misled raised fact questions that could not be resolved on summary

22   judgment. *Id.* at 1361-1362. In reaching this conclusion, the court rejected the federal cases that

23   have held that California unfair advertising claims require extrinsic evidence to show the public is

24   likely to be misled. *Id.* at 1362. It went on to acknowledge that the defendants' explanations of the

25   statements might be technically true; the defendants argued that the statement that consumers could

26   view the schedule up to seven days in advance meant only that the system had the capacity to show

27   the schedule up to seven days in advance and that the statement that customers would receive 50

28   channels was not a statement that all 50 channels would be available at all times. *Id.* Nonetheless,

16

United States District Court

For the Northern District of California

1   the court concluded that it could not say that there was no triable fact as to whether the statements

2   were untrue or misleading. *Id.*

3         Here, Silicon Image has pointed to statements made by Analogix that its chips are

4   "compatible" and "drop-in replaceable" with Silicon Image chips. The evidence is undisputed that

5   these chips were not software compatible with those of Silicon Image, even if they were pin and

6   register compatible. Thus, the question of whether reasonable consumers in the target group would

7   be likely to be deceived or misled depends on how they would understand these representations, that

8   is, whether they would be likely to believe the statements meant Analogix's chips are software

9   compatible. As in *Echostar*, Silicon Image has not presented evidence showing that the engineers

10  and business people who are told that Analogix's chips were compatible would likely have been

11  misled into thinking the chips were software compatible. Nonetheless, to the extent that a reasonable

12  interpretation of "compatible" and "drop-in replaceable" could encompass software compatibility as

13  well as pin and register compatibility, the Court concludes that a fact question remains for trial, as in

14  *Echostar*.

15        The Court rejects Analogix's reliance on the federal cases that have held that false

16  advertising claims under California law require extrinsic evidence that customers are likely to be

17  deceived. *See, e.g., Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1182 n.8 (9th 2003); *Heighley v.*

18  *J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003). As discussed above,

19  California courts of appeal have rejected this interpretation of California law. Most recently, the

20  court in *Colgan* explained that this line of federal cases improperly imported into California unfair

21  competition law standards of proof derived from the federal Lanham Act which, in contrast to

22  California law, requires plaintiffs to demonstrate that misleading statements deceived "a significant

23  portion of the recipients." 135 Cal. App. 4th at 681.

24        This court is not bound by the district court cases on which Analogix relies. Further, to the

25  extent that the Ninth Circuit also adopted the extrinsic evidence requirement in *Rice*, albeit without

26  any significant discussion of the question, that case was "only binding in the absence of any

27  subsequent indication from the California courts that [the Ninth Circuit's] interpretation was

28  incorrect." *See Owen by and through Owen v. U.S.*, 713 F.2d 1461, 1464 (9th Cir. 1983). As several

California appellate courts have rejected the Ninth Circuit's interpretation of California law and the Court finds no California case in which the federal courts' interpretation of California law has been approved, the Court concludes that it must follow the more recent California cases on the question of extrinsic evidence. *Id.* (quoting *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982) for proposition that "[i]n the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently").

The Court denies Analogix's motion for summary judgment as to Silicon Image's false advertising claim.

## IV.    CONCLUSION

For the reasons stated above, Analogix's motion for summary judgment is DENIED except as to the question of whether Silicon Image's source code its substantially similar to that of Analogix. On that point, the Court holds, as a matter of law, that Silicon Image's source code is not substantially similar to Analgix Source code and therefore, that Analogix's source code does not infringe Silicon Image's copyrights. Silicon Image's motion for summary judgment is GRANTED. Analogix's counterclaim is dismissed with prejudice to the extent Analogix seeks actual, but not nominal, damages. Analogix will be permitted to proceed on this claim only to the extent that it seeks nominal damages.


IT IS SO ORDERED.


Dated: November 3, 2008

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
For the Northern District of California

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

SILICON IMAGE, INC.,

        Plaintiff,

    v.

ANALOGIX SEMICONDUCTOR, INC. et al,

        Defendant.

    Case Number: CV07-00635 JCS

    **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 3, 2008, I SERVED a true and correct copy(ies) of the attached, Order re Motions for Summary Judgment (Dockets #207, 175) by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Darin Walter Snyder
Ryan James Padden
O'Melveny & Myers LLP
28th Floor
Irvine, CA 92612
San Francisco, CA 94111

Tyler Woods
Attorney at Law
18191 Von Karman Avenue, Suite 500
Two Embarcadero Center

David Allan Kays
Rick C. Chang
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304

David S. Almeling
Luann Loraine Simmons
O'Melveny and Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111

Dated: November 3, 2008

Richard W. Wieking, Clerk
By: Lashanda Scott, Deputy Clerk